William A. NISBET, Katherine Nisbet, Lanna M. Nisbet, Emma M. Nisbet, J. C. Nisbet, Plaintiffs-Appellants,

v.

Ira VAN TUYL and Elsin C. Van Tuyl, doing business as V-T Drilling Company, Ray Ryan and Helen Ryan, doing business as Ryan Oil Company, Defendants-Appellees,

William A. NISBET, Katherine Nisbet, Lanna M. Nisbet, Emma M. Nisbet, J. C. Nisbet, Plaintiffs-Appellees,

v.

Ira VAN TUYL and Elsin C. Van Tuyl, doing business as V-T Drilling Company, Ray Ryan and Helen Ryan, doing business as Ryan Oil Company, Defendants-Appellants.

Nos. 11874–11875.

United States Court of Appeals
Seventh Circuit.

March 7, 1957.

William L. Craig, Nat H. Youngblood, Herman L. McCray, Evansville, Ind., for plaintiffs. James G. Wheeler, of Wheeler & Marshall, Paducah, Ky., of counsel.

William P. Foreman, Joe Vol Butt, Frederick P. Bamberger, Edmund F. Ortmeyer, Wesley Bowers, Ellis B. Anderson, Evansville, Ind., for defendants (appellees and cross-appellants).

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff sued to recover damages said to have resulted from defendants' negligence in failing to seal properly an abandoned oil well. The cause was before us previously on appeal from a summary judgment in favor of defendant. 224 F.2d 66. As we pointed out there, the complaint was predicated upon an alleged violation of §§ 353.110 and 353.120 of Kentucky Revised Statutes, which impose a duty to plug an abandoned oil or gas well drilled through a "workable coal bed" and prescribes the procedure to be followed. Plaintiffs sought to recover the actual cost of replugging, notwithstanding the fact that that cost had not been borne by plain-

tiffs primarily, but rather by a third party, the West Kentucky Coal Company. The district court concluded that, though defendants were liable, the recovery should be limited to $1,000, the amount actually expended by plaintiffs. On appeal plaintiffs deny that their damages should be so restricted and, on cross-appeal, defendants deny all liability.

In June, 1947, plaintiffs entered into an oil and gas lease covering Kentucky land which was later assigned by the lessees to defendant Ryan Oil Company, who caused a well to be drilled which ultimately proved to be non-productive. Thereupon, plaintiffs notified the geologist and the men working about the well that they wanted it properly plugged and sealed, so as not to interfere with any coal mining operations, for which they expected to lease the land. Later, plaintiffs did lease the coal to the West Kentucky Coal Company, who, after mining had begun, discovered that gas and water were leaking into the mine from the abandoned well. Thereafter, the coal company entered into an agreement with plaintiffs whereby the former agreed to replug the well. The pertinent provisions of this contract were: "(1) That if the party of the second part [the Coal Company] will undertake to cause to be properly plugged said oil well and advance the cost thereof, * * * [plaintiffs] *will repay from royalties to be earned upon demand* the total cost when the same is ascertained. (2) [Plaintiffs] do hereby advance to the second party upon said total cost the sum of One Thousand Dollars ($1,000.00) the receipt of which is hereby acknowledged by the second party and * * * [plaintiffs] covenant and agree upon demand when the total cost of said plugging is finally ascertained to execute their note to the second party payable in one year from the date thereof subject to the credit of One Thousand Dollars ($1000.00) this day advanced, * * *." (Emphasis supplied.) The replugging was completed by the coal company at a cost "in ex-

cess of * * * $1000 but less than * * * $5104", as found by the district court, and the $1,000 mentioned was withheld from coal royalties accruing to plaintiffs. However, no demand was ever made by the coal lessee for the note mentioned in the agreement and, at the time of suit, no further royalties had accrued or were being withheld, and coal mining had completely abated.

Upon defendants' contention that no liability exists, it is urged that no statutory violation resulted for the reason that the well had not been drilled through "workable coal beds" within the meaning of the statute. A "workable coal bed" is specifically defined in § 353.010 of Kentucky Revised Statutes in these words: "(a) A coal bed actually being operated commercially, (b) A coal bed that the department decides can be operated commercially and the operation of which can reasonably be expected to commence within not more than ten years, or (c) Any coal bed that, from outcrop indications or other definite evidence, proves to the satisfaction of the department to be workable and, when operated, will require protection if wells are drilled through it." Obviously, the pertinent provisions are (b) and (c). It is defendants' position that, as there was no evidence of proof having been made to the satisfaction of the Department of Mines and Minerals that the coal bed was workable and protection needed, or, of a decision made by the Department, the requirements of neither (b) nor (c) had been met, and, consequently, that no liability ensued.

■ There is no dispute that the well was drilled through three separate minable coal veins. Likewise, defendants admit that they carefully logged the drilling of the well. Nevertheless, defendants contend that they had no actual knowledge of the presence of coal, although they candidly admit that a duty to cap properly an abandoned well is imposed under the circumstances mentioned in the statute. The record is replete with evidence that defendants should have known, in the exercise of

reasonable care, that the well was being drilled through coal bearing strata and that the circumstances were such as to impose a duty on them to seal the well properly as provided by §§ 353.110 and 353.120. We cannot say as a matter of law that the trial court's finding in this respect is clearly erroneous.

As was succinctly stated, in Meeks Motor Freight v. Ham's Adm'r, 302 Ky. 71, 193 S.W.2d 745, 748, quoting from 38 Am.Jur. § 23 at page 665: "'The foundation of liability for negligence is knowledge—or what is deemed in law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury.'" The court added: "Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and where a situation suggestions investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law. * * * One under duty to use care for which knowledge is necessary cannot escape liability for negligence because of voluntary ignorance." See also, Howard v. Fowler, 306 Ky. 567, 207 S.W.2d 559, 561. To hold that, in the absence of actual knowledge of existence of coal bearing beds, there was no duty imposed to seal the well would strike at the very heart of the remedial statute. To allow a party to avoid liability merely by averring bald ignorance would completely frustrate the purposes of the legislation.

Defendants further insist that there is complete lack of proof that the amounts expended in replugging the well were reasonable and necessary. As to this, we find that the record adequately supports the conclusion that the procedure followed in plugging the well was necessary, and that the cost range found by the trial court to be reasonable was not clearly erroneous.

There remains the further question of the amount of damages recoverable. In this respect, in essence, the initial problem is whether plaintiffs should be allowed to recover the actual cost expended by the coal company in remedying the situation created by defendants, or whether they should be limited to their actual expenditures or to the liabilities incurred by them under the coal company agreement.

There is no doubt that the question of recoverable damages is governed by the law of Kentucky. As established in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 497, 61 S.Ct. 1020, 85 L.Ed. 1477, a federal court must look to the conflicts of law rules of the state in which it is sitting. Indiana follows the general rule that the issue is a substantive matter to be determined by the law of the place where the wrong was committed. Restatement, Conflict of Laws, § 412; Buckles v. Ellers, 72 Ind. 220, 223.

We must determine, irrespective of the effect of the agreement, whether plaintiffs may, as a matter of law, recover the entire amount expended by the coal company. In other words, are plaintiffs restricted in the amount of their recovery by the fact that they have, in effect, been partially compensated from a collateral source for the injury sustained? As a matter of general law, there is support for plaintiffs' position that they are entitled to all reasonable and proper costs, regardless of the arrangement with the coal company. In 15 Am.Jur. § 198, at page 615, it is stated: "As a general rule, total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury." However, a contrary view is pointed out in 15 Am.Jur. § 199, at page 616: "some authorities hold that no recovery for attention and medical services can be had *unless there has been an actual expenditure of money for such attention and services or a liability therefor has been incurred,* on the theory that the recovery must be for such pecuniary

damages only as the plaintiff has actually suffered." (Emphasis supplied.) The leading Kentucky case in this respect is Sedlock v. Trosper, 307 Ky. 369, 211 S.W.2d 147, 13 A.L.R.2d 349. There plaintiff attempted to recover for medical and hospital expenses for which he had incurred no liability, as they had been paid pursuant to an insurance benefit plan. At page 150 of 211 S.W. 2d the court enunciated the principles controlling in this cause: "In an action for personal injuries the reasonable value of necessary medical services and hospitalization is an element of damage, *but recovery may be had only if the plaintiff has paid for such services or has incurred liability therefor.* (Cases cited.) These are special damages and their recovery is purely compensatory." (Emphasis supplied.) To the same effect is Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S.W.2d 727, a personal injury case, wherein the court held that no recovery would be permitted for housekeeping expenses not shown to have been paid or liability incurred therefor by plaintiff. Similarly, in Bartlett v. Vanover, 260 Ky. 839, 86 S.W.2d 1020, at page 1021, the court had this to say: "In actions of this character recovery may be had for amounts shown to have been expended or incurred for hospital bills, medical treatment, etc., provided such damages are properly pleaded. * * * The word 'incurred,' as used in pleadings or instructions regarding medical expense, etc., paid out or incurred, means to become liable for." See also, Hall v. Proctor Coal Co., 236 Ky. 813, 34 S.W.2d 425. Inasmuch as we are bound by the law of Kentucky, we must conclude that plaintiffs can recover damages only to the extent that they have either actually expended funds or incurred liability as a result of the injuries sustained.

Ultimately, therefore, we face the question of whether plaintiffs have sustained their burden of proof in establishing that they have made expenditures or incurred liabilities in excess of $1,000. It is plaintiffs' position that, since the contract is still in full force and effect, there exists a binding obligation on their part to reimburse the coal company for the entire cost of sealing the well. It is significant, however, that the first paragraph of the contract discloses that plaintiffs promised to pay the cost of replugging "from royalties to be earned." Yet, it is urged, that by reason of the second paragraph, there remains a possibility that the coal company may demand that a note be executed to cover the actual cost of plugging and that this situation creates a valid liability. Such an interpretation, we think, would render the two paragraphs completely irreconcilable, a situation which would hardly seem to have been within the contemplation of the parties. Clearly, the more obvious and logical construction of the second paragraph is that the parties intended that a note would be executed, payable only out of a specific fund, namely, royalties to be earned. The evidence clearly negates existence of any royalties from which a note could be paid. As we have already emphasized, there has never been a demand on plaintiffs for anything in addition to the $1,000 paid or for delivery of the note. Similarly, so far as the record shows, no royalties have been or are being withheld. And it is significant that all coal mining operations have ceased. Consequently, there was complete failure to prove that any specific fund out of which the alleged liability can be satisfied is in being or is capable of coming into existence. Plaintiffs have failed to prove any legal obligation on their part to the coal company. In view of Kentucky law, they are, on this record precluded from recovering anything other than the $1,000.

The judgment is affirmed.