**CITY OF ALEXANDRIA, Appellant (Defendant Below),**

v.

**Ermal ALLEN, Jr., Appellee (Plaintiff Below).**

No. 48A02–8804–CV–153.

Court of Appeals of Indiana, Second District.

March 27, 1990.

Rehearing Denied April 23, 1990.

Peter G. Tamulonis, Donald L. Dawson, John B. Drummy, Thomas B. Blackwell, Kightlinger & Gray, Indianapolis, for appellant.

Jeffrey A. Lockwood, John E. Eisele, Michell P. Chabraja, Schuyler, Eisele & Lockwood, Anderson, for appellee.

SULLIVAN, Judge.

The City of Alexandria ("City"), defendant below, appeals a judgment entered upon a jury verdict in favor of Ermal Allen, Jr. ("Plaintiff").

We affirm.

Plaintiff was employed by the City as an Assistant Chief for the Alexandria Fire Department. He began working for the City as a fireman in November of 1968. On April 10, 1985, Plaintiff and two other firemen, Robert Cunningham and Brian Etchison, were on duty. Plaintiff was the shift commander and, as such, was in charge of inspecting the fire equipment consisting of Engines No. 1, 2 and 3. The daily inspections included a check of fluid levels, lights, and a visual inspection of the truck and the equipment on the truck. Also, the trucks were tested to see if they would start. On that day Brian Etchison informed Plaintiff that he would drive Engine No. 2 only under protest because he felt it was unsafe. Also, it was necessary to place a battery charger on Engine No. 3 because the engine did not start when tested. Nevertheless, all three engines were checked into service.

At 2:20 P.M., a grass fire near Little Lakes Industries was reported to the Fire Department. Plaintiff and Brian Etchison responded to the call in Engine No. 2. Plaintiff was driving. He pulled the truck out of the fire station and attempted to make a left-hand turn. While attempting to negotiate the turn, Plaintiff heard a "pop" and felt the right front end of the truck give way. Plaintiff had difficulty steering the vehicle. He felt the engine accelerate and attempts at braking proved unsuccessful. The right front of the vehicle struck a house located across the street and north of the fire station. Plaintiff was injured as a result of the accident. Plaintiff brought suit against the City on the basis of negligence in maintaining En-

gine No. 2. The jury found for the Plaintiff and awarded $70,000 in damages.

The City presents several issues for our review which we rephrase. The City contends that the trial court lacked subject matter jurisdiction of Plaintiff's claims as a result of Plaintiff's receipt of benefits under the Worker's Compensation Act.

The City also contends that it is entitled to judgment because the verdict and judgment are contrary to law, contrary to the evidence, and not supported by sufficient evidence. Under this heading, the City questions:

(1) Whether the evidence is sufficient to support a finding of negligence;

(2) Whether the evidence shows that either Plaintiff was contributorily negligent as a matter of law or the City was not negligent.

The City alleges that the failure of the trial court to grant judgment on the evidence in its favor was contrary to law and contrary to the evidence on the basis of the same alleged errors which render the judgment itself contrary to law and contrary to the evidence.

The City alternatively argues that it is entitled to a new trial on the basis of the following alleged errors:

(1) Whether the trial court erred in allowing Plaintiff to testify as an expert and give an opinion as to the cause of the accident;

(2) Whether the trial court erred in permitting evidence of medical expenses;

(3) Whether the trial court erred in admitting evidence of unrelated problems with Engine No. 2 as well as the other vehicles.

I

SUBJECT MATTER JURISDICTION

■ The City argues that the trial court lacked subject matter jurisdiction of the Plaintiff's claims as a result of Plaintiff's receipt of benefits under the Worker's Compensation Act. The City directs our attention to I.C. 22–3–2–6 which provides that an employee subject to I.C. 22–3–2 through I.C. 22–3–6 is limited in his rights and remedies for personal injury to those granted to him under the Worker's Compensation Act and is precluded from availing himself of common law rights and remedies. The City then cites I.C. 22–3–2–2 (Burns Code Ed.Repl.1986) which provided in relevant part:

"Employers and employees bound by act —Exceptions.—Every employer and every employee, except as herein stated, shall be required to comply with the provisions of IC 22–3–2 through IC 22–3–6 [22–3–2–1—22–3–6–3] respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby. This law shall not apply to railroad employees engaged in train service as engineers, firemen, conductors, brakemen, flagmen, baggagemen, or foremen in charge of yard engines and helpers assigned thereto. This law shall not apply to employees of municipal corporations in this state who are members of the fire department or police department of any such municipality and who are also members of a firemen's pension fund or of a policemen's pension fund: Provided, however, That if the common council elects to purchase and procure workmen's compensation insurance to insure said employees with respect to medical benefits under the provisions of this law, the medical provisions of this law shall apply to members of the fire department or police department of any such municipal corporation who are also members of a firemen's pension fund or a policemen's pension fund: Provided, further, That in any instance when any municipal corporation has heretofore purchased or procured, or hereafter purchases or procures workmen's compensation insurance covering members of the fire department or police department who are also members of a firemen's pension fund or a policemen's fund, and has paid or hereafter pays the premium or premiums for such insurance, the payment of such premiums is hereby declared to be a legal and allowable expenditure of funds of any municipal cor-

poration: Provided, further, That in any case where the common council has procured workmen's compensation insurance as herein provided, any member of such fire department or police department employed in the city carrying such workmen's compensation insurance as herein provided shall be limited to recovery of medical and surgical care, medicines, laboratory, curative and palliative agents and means, X-ray, diagnostic and therapeutic service, to the extent that such services are provided for in the workmen's compensation policy so procured by such city, and shall not also recover in addition thereto for such same benefits as are provided in IC 36–8–4."[1]

Since Plaintiff is a member of a firemen's pension fund and the City did procure worker's compensation insurance to provide medical benefits to those employed by it, the City argues that under the above statutes, the Plaintiff's claim against it is within the exclusive jurisdiction of the Industrial Board. We are not persuaded by the City's argument.

In *Elwell v. City of Michigan City* (1979) 3d Dist., 179 Ind.App. 434, 385 N.E.2d 1203, our Third District addressed a similar argument with respect to a policman who was injured in the course of his duties. In that case, the City had elected to purchase worker's compensation insurance and Elwell was a member of the policemen's pension fund. In construing I.C. 22–3–2–2, the court held that Elwell was not precluded from suing the city under common law. The court interpreted the final proviso of I.C. 22–3–2–2 as above quoted, and held that

> "the clear import of this proviso is to limit the *medical benefits* payable to exempt officers to those provided by the compensation act when the city has elected to purchase such insurance." *Id.* 385 N.E.2d at 1204. [Emphasis supplied.]

The City urges us not to follow *Elwell.* The City contends that the Third District "failed to properly consider I.C.

§ 22–3–2–6" in deciding *Elwell.* Appellant's Brief at 42. Indiana Code 22–3–2–6 states that the rights and remedies granted to an employee subject to I.C. 22–3–2 to I.C. 22–3–6 are exclusive. The City maintains that Plaintiff was an employee subject to I.C. 22–3–2 to I.C. 22–3–6 "[u]nder the clear language of I.C. § 22–3–2–2" and therefore Plaintiff is limited to the exclusive rights and remedies granted by the Worker's Compensation Act. Appellant's Brief at 42. The City, however, ignores that I.C. 22–3–2–2 is an *exemption* statute, defining what class of employees are exempt from the provisions of the Worker's Compensation Act. At the risk of being repetitive, we again refer to the language of I.C. 22–3–2–2. The title of the statute is "Employers and employees bound by act—*Exceptions* ", and the statute begins: "Every employer and every employee, *except as herein stated,* shall be required to comply with the provisions of I.C. 22–3–2 through I.C. 22–3–6...." [Emphasis supplied.]

We are not persuaded by the City's contention that *Elwell* was erroneously decided, and therefore agree with the Third District's construction of I.C. 22–3–2–2. Accordingly, we hold that, except for medical benefits, the Plaintiff is not limited in his remedy or ability to recover for his injuries to those provided for under the Worker's Compensation Act.

## II

## SUFFICIENCY OF EVIDENCE AS TO DEFECTIVE CONDITION OF VEHICLE

The City argues that the evidence is insufficient to support a finding that any deficiency in the fire truck caused the accident in which Plaintiff was injured.

Where the sufficiency of the evidence is challenged on appeal, this court conducts a limited review. By our very nature as a reviewing court, the Court of Appeals may never reweigh the evidence. The parties

---

**1.** The statute in its present form is found at I.C. 22–3–2–2 (Burns Code Ed.Supp.1989). No sub-

stantive amendments were made.

are entitled to a trial, the very purpose of which is to have the opportunity to present evidence in their favor and to rebut evidence presented against them. The evidence is weighed and conflicts are resolved at the trial stage. Therefore, when the sufficiency of the evidence is challenged on appeal, this court considers only the evidence favorable to the appellee together with all reasonable inferences which may be drawn from such evidence. *Ind. Dep't of State Revenue v. Brown Boveri* (1982) Ind., 439 N.E.2d 561; *Harris Builders, Inc. v. Kopp* (1974) 160 Ind.App. 354, 311 N.E.2d 841. In order to succeed on appeal, appellant must show that the facts and inferences favorable to the judgment of the trial court are insubstantial or nonprobative. *F.D. Borkholder Co., Inc. v. Sandock* (1980) 274 Ind. 612, 413 N.E.2d 567; *Harris Builders, Inc., supra,* 311 N.E.2d 841. Although there are no clear standards for determining when evidence is insubstantial or nonprobative, it has been held that the reviewing court will reverse the judgment only if the evidence leads to but one conclusion and the trier of fact reached the opposite conclusion. *Palmer v. Decker* (1970) 253 Ind. 593, 255 N.E.2d 797.

■ The City here argues that there is no evidence of probative value to support a finding that any deficiency in the fire truck caused the accident. We cannot agree. Plaintiff's contention at trial was that the accident was caused by a defective component in the right front spring assembly. Plaintiff testified at trial that as he pulled out of the fire station and began to make a left hand turn, he heard "a pop and the front end sort of gave down." Record at 639–640. He further testified that the engine revved up and he couldn't turn the steering wheel. He testified that the engine began to race and that the harder he pushed on the brakes, the more the truck kept going. Plaintiff testified that after the accident, he looked under the truck and

saw a piece of the shackle arm, which connects the spring assembly, hanging down.

Brian Etchison, a fireman who was also in the truck at the time of the accident, testified that as the truck was proceeding out of the fire station he felt the engine surge even though he knew the Plaintiff was hitting the brakes. He further testified that he noticed the Plaintiff fighting with the steering a little bit.

Finally, Julius Ball, a diesel mechanic, testified that he had worked on Engine No. 2 while working for C.W.B. Truck Service. He testified that five weeks prior to the accident, he was at the fire station and noticed that the right front end was lower than the left side. He testified that although he didn't look at the spring assembly or suspension, the fact that the right front end was hanging lower than the left indicated that "[t]he springs was weak or somethin' was loose on the front of the right side lettin' the right side lower than the left." Record at 732. Julius Ball was allowed to testify as an expert[2] and gave the following testimony:

"[Attorney for Plaintiff]

Q. I'll ask you whether or not you have an opinion of what would have occurred on Engine 2 if the leaf spring on the right side were to have given way and the vehicle were underway, what would the vehicle do? Do you have an opinion, Sir, what the vehicle would do?

[Julius Ball]

A. Well, there's probably ...

Q. Just, do you have an opinion, Sir?

A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. You can give your opinion, now, Sir?

A. Okay, if the one on the right would go away ... give way, and let the right side fall, your motor would tilt which would cause your throttle to

---

**2.** The Plaintiff was also allowed to testify as an expert concerning what would happen if the right front spring assembly were to break while the fire truck was in motion. The City contends this was error. We will address this allegation of error in a separate part of this opinion, and for purposes of determining the sufficiency of the evidence, we decide without consideration of Plaintiff's opinion.

stick and also, it can cause your flex not to work properly because you wouldn't have it. The lever would come out unless it's a cable ... cable operated flex and it would pull to the right.

Q. Would it be difficult to steer?

A. Yes, it would.

Q. And, why would that be, Sir?

A. Because your frame cocked down, your spring's cocked over to one side and it's holdin' the axle and you're not going to be able to turn it." Record at 734–736.

Julius Ball further testified that he had occasion to see the truck after the accident while the truck was being stored. At trial, he gave the following testimony:

"it looked like they had a spring anchor on the right side, the bolts had sheared off or the rivets had sheared off it and on the rear of it, the spring iron on it still had part of the shaft that goes through the holes that spring to the hanger was still stuck in it and it was broke off." Record at 737.

The evidence was undisputed that the right front spring assembly was indeed broken after the accident. Although no direct evidence was available as to when the spring assembly broke, the City maintains that the spring assembly was broken as a result of the collision with the house. However, based upon the foregoing testimony, the jury could have inferred that the spring assembly broke prior to impact with the house, causing the difficulty in steering and the surge in the engine described by the Plaintiff and Brian Etchison and discussed by Julius Ball.

■■■ The City ostensibly argues that this inference is not sufficient when compared to the direct testimony of the City's experts who testified that because of the position of the spring, the spring assembly could not have broken prior to impact. However, as stated in *Taylor v. Fitzpatrick* (1956) 235 Ind. 238, 244, 132 N.E.2d 919, 922,

"[i]f there is a rational connection between facts established by direct evidence and the ultimate fact inferred therefrom, such inference is not disqualified simply because it is disputed by the testimony of a witness."

Further, an inference is not disqualified simply because the subject of the inference is a matter of scientific knowledge. *Magazine v. Shull* (1945) 116 Ind.App. 79, 60 N.E.2d 611. "Expert testimony concerning the subject might be entitled to greater weight than the inference, but the inference, nevertheless, if legitimate and reasonable, is competent evidence." *Id.* at 85, 60 N.E.2d at 613. Therefore, the inference in this case, if probative is entitled to be weighed against the City's evidence to the contrary. The fact that it is the testimony of an expert which contradicts the inference, does not render the inference incompetent.

However, to be probative, an inference must be "reasonable" or "logical." *See Miller v. State* (1968) 250 Ind. 338, 236 N.E.2d 173; *Beaman v. Hedrick* (1970) 146 Ind.App. 404, 255 N.E.2d 828. This court discussed the reasonableness of an inference in *DeMichaeli & Associates v. Sanders* (1976) 167 Ind.App. 669, 340 N.E.2d 796. There, we said:

"the reasonableness of an inference is determined by whether the inferred fact is a *probable* hypothesis from the proven facts and circumstances in light of common knowledge and experience." *Id.* at 680–681, 340 N.E.2d at 803.

A reasonable inference must be based upon more than speculation or mere possibility. *Id.* We hold that it would have been reasonable for the jury in this case to infer that the accident was caused by a breakage in the right front spring assembly. Both the Plaintiff and Brian Etchison described the engine surge and difficulty in steering; the Plaintiff described that he heard a "pop." Julius Ball testified that earlier the right front side of Engine No. 2 was hanging lower than the left indicating a weakness in the suspension system. The spring assembly was in fact broken after the accident. Finally, Julius Ball explained what could happen when the leaf spring assembly on the right side breaks, describing events similar to those described by Plain-

tiff and Brian Etchison. Therefore, the inferred fact, i.e., breakage in the right front spring assembly, is a probable hypothesis from the facts and circumstances in this case and so constitutes a reasonable inference. Although strong evidence was presented by the City indicating that the spring assembly broke upon impact and was not the cause of the accident, we must view only the evidence favorable to appellee and determine if it is probative. Based upon the foregoing discussion we hold that the evidence and reasonable inferences supporting the judgment of the court were probative and therefore, sufficient to support a finding that a deficiency in the spring assembly caused the accident.

## III

### SUFFICIENCY OF EVIDENCE AS TO CITY'S KNOWLEDGE

■ The City next contends that the evidence was insufficient to show that the City had knowledge of the claimed deficiency or of any facts which should have put it on notice that the deficiency might exist. The City properly notes that knowledge "or opportunity by the exercise of reasonable diligence to acquire knowledge" of the condition which results in injury is an essential element necessary to establish liability. *Conway v. Park* (1941) 108 Ind.App. 562, 572, 31 N.E.2d 79, 83.

■ The record is replete with testimony concerning the complaints made about Engine No. 2. Brian Etchison testified that he complained several times to then Chief Warner about Engine No. 2 and that he further told both Chiefs Owen and Summer that he thought Engine No. 2 was unsafe. He testified that he told the Mayor of Alexandria that Engine No. 2 was unsafe. Chief Warner admitted that there was no regularly scheduled maintenance of Engine No. 2 although complaints in varying degrees were made about Engine No. 2 weekly. He testified that he believed Engine No. 2 needed attention. This testimony illustrates that the City "by the exercise of reasonable diligence" could have acquired knowledge concerning the suspension system of Engine No. 2. The City may not

ignore complaints of the magnitude made concerning Engine No. 2 and later claim they had no knowledge of the actual condition of Engine No. 2 which led to the accident involving Plaintiff. *See Nisbet v. Van Tuyl* (1957) 7th Cir., 241 F.2d 874. When the situation is such to suggest an investigation or inspection in order to ascertain the extent of the dangers presented, the duty is imposed by law to make such an investigation. *Id.* A party under such an obligation cannot escape liability by voluntary ignorance. *Id.* When the party charged with the duty to inquire had knowledge or means of knowledge of which he did not avail himself, that knowledge must be implied. "[T]he means of knowledge combined with the duty to utilize that means equate with knowledge itself." *Ashland Pipeline v. Indiana Bell Telephone Co.* (1987) 1st Dist.Ind.App., 505 N.E.2d 483, 488, *trans. denied.* Reviewing the evidence favorable to Plaintiff, we hold that the complaints made about Engine No. 2 constituted sufficient evidence to establish that the City was placed on notice that Engine No. 2 was unsafe and, so being, was likely to result in an accident. The City was under a duty to conduct an investigation to apprise itself of the exact condition of Engine No. 2. The City may not now absolve itself of liability by having failed to do so.

The City argues that Plaintiff had "better" knowledge of the defect than the City because Julius Ball reported that the right front end of the truck was hanging lower than the left to Plaintiff prior to the accident and Plaintiff failed to report the comment to the City. The City cites several cases which hold that an employee is prevented from recovering from his employer when the employee is hired to perform a duty and is injured because of a failure to perform his duty. *See e.g., American Coal Mining Company v. Lewis* (1922) 77 Ind.App. 394, 133 N.E. 846; *Parker v. Great Atlantic & Pacific Tea Company* (1956) N.D.Ind., 146 F.Supp. 871.

■ Initially, we restate that the City had constructive knowledge of the condition of Engine No. 2. Such knowledge of

the City ends the duty of the Plaintiff to make a further complaint regarding the condition of Engine No. 2. Additionally, unlike *Lewis, supra,* and *Parker, supra,* cases relied upon by the City, there is no evidence to show that had the Plaintiff reported Julius Ball's comment that the accident would likely have been avoided. In other words, there is no showing that Plaintiff was injured by a failure to perform *his* duty. Previous complaints reported to the City did not receive prompt and satisfactory attention. Finally, the fact that Plaintiff may have had "better" knowledge than the City concerning the ultimate cause of the accident is not relevant to a determination of whether the City had the requisite knowledge essential to determine if the City could be held negligent. "Better" knowledge is only relevant to the extent that it bars recovery, i.e., through incurred risk or contributory negligence. These concepts will be addressed separately.

## IV

### CONTRIBUTORY NEGLIGENCE AND EQUAL KNOWLEDGE DOCTRINE

■ The City next asserts that either Plaintiff was contributorily negligent as a matter of law or the City was not negligent. The burden of proving contributory negligence rests with the defendant. In this case, a verdict was rendered in favor of Plaintiff. Therefore, the City is appealing from a negative judgment and may only succeed if the judgment is contrary to law. *Kroger Co. v. Haun* (1978) 177 Ind. App. 403, 379 N.E.2d 1004. Contributory negligence as a matter of law occurs in those cases in which the voluntary conduct of the plaintiff exposed him to imminent and obvious dangers which a reasonable man exercising due care for his own safety would have avoided. *Jones v. Gleim* (1984) Ind., 468 N.E.2d 205; *Hundt v. LaCrosse Grain Co.* (1983) Ind., 446 N.E.2d 327.

■ The City specifically urges that the "equal knowledge" doctrine applies to this case. The precedent recognizing the equal knowledge doctrine has held a plaintiff guilty of contributory negligence as a matter of law when the plaintiff is "chargeable with knowledge of the dangers inherent in his conduct equal to or surpassing that of the alleged tortfeasor." *Dreibelbis v. Bennett* (1974) 162 Ind.App. 414, 319 N.E.2d 634, 639. The City argues that since Plaintiff in this case was at least as aware of the problems in Engine No. 2 as the City was, the Plaintiff was contributorily negligent as a matter of law.

In this case, the evidence shows that Plaintiff and the City were both aware that there were complaints regarding the condition of Engine No. 2 and its safety was called into question. However, as was earlier determined, the City had a duty to respond to the complaints by way of further investigation and inspection. The City is charged with such knowledge as would be revealed by further investigation. Although the Plaintiff was an Assistant Fire Chief, his duties were not as great as the City's. His knowledge was only limited to the general complaints of which he was aware. His knowledge of the complaints did not shift to him an additional or extra duty of conducting an investigation of the precise source of the complaints, nor did he have a duty to make repairs of the vehicle. Although the Plaintiff and the City were both aware of the complaints concerning Engine No. 2, the City had a duty to act upon the complaints and obtain additional knowledge. Because of this duty, the City is charged with greater knowledge than the Plaintiff and therefore, Plaintiff's knowledge does not legally "equal" the City's.

Further, even if the equal knowledge doctrine were applicable, caselaw has apparently limited the equal knowledge doctrine to those cases in which the plaintiff and defendant are "active participants" in the injury causing conduct. *See, Kroger Co. v. Haun, supra,* 177 Ind.App. 403, 379 N.E.2d 1004; *Dreibelbis v. Bennett, supra,* 162 Ind.App. 414, 319 N.E.2d 634. The City has not demonstrated that Plaintiff actively participated in the City's decision not to inspect or repair Engine No. 2.

## V

### INCURRED RISK

■ The City next argues that Plaintiff incurred the risk of his injuries as a matter of law. Incurred risk is generally a question of fact for the trier of fact. However,

"[i]ncurred risk can be found as a matter of law *only* if the evidence is without conflict and the sole inference to be drawn is that the plaintiff (a) had actual knowledge of the specific risk, and (b) understood and appreciated the risk." *Stainko v. Tri–State Coach Lines, Inc.* (1987) 3d Dist. Ind.App., 508 N.E.2d 1362, 1364, *trans. denied.*

Incurred risk is a defense to a negligence claim distinct from contributory negligence. It entails a subjective analysis into the plaintiff's actual knowledge and voluntary acceptance of the risk and involves a mental state of venturousness on the part of the actor. *Richardson v. Marrell's, Inc.* (1989) 3d Dist. Ind.App., 539 N.E.2d 485, *trans. denied; Power v. Brodie* (1984) 1st Dist. Ind.App., 460 N.E.2d 1241. Incurred risk requires more than a general awareness of a potential for mishap. *Power, supra.*

■ Therefore, to be successful, the City must show that the sole inference to be drawn from the evidence is that Plaintiff had actual knowledge of the risk to him in taking Engine No. 2 and understood and appreciated the risk and voluntarily exposed himself to the accident which occurred. The City contends that, as an employee, Plaintiff assumed the risks ordinarily incident to the discharge of his duties of which he had knowledge, citing *City of South Bend v. Estate of Rozwarski* (1980) 3d Dist. Ind.App., 404 N.E.2d 19.[3]

In *Rozwarski*, the plaintiff, a fireman, was killed as a result of injuries received when the firetruck on which he was riding collided with a motor vehicle. The plaintiff had been riding on a platform on the back of the firetruck where he was normally required to ride. There were no safety belts or harnesses for the firemen who rode on the platform. The plaintiff's estate brought suit alleging negligence. The court held that the plaintiff-deceased incurred the risk as a matter of law. The court held:

"It is also well settled that at common law an employee assumes such risks ordinarily incident to the discharge of his duties, arising from defects or dangers open and obvious so that he has knowledge of them or in the exercise of reasonable care should have knowledge of them." [4] *Rozwarski, supra,* 404 N.E.2d at 21.

The *Rozwarski* court quoted *Indianapolis Traction and Terminal Co. v. Mathews* (1912) 177 Ind. 88, 97 N.E. 320, for the proposition that when an employee's working conditions are "augmented by abnormal conditions produced by the negligence of his employer" and the employee continues to work "without making any objection, and without receiving any promise that the abnormal conditions, however caused, will be remedied, [the employee] is deemed to have assumed the risk thus superadded." *Rozwarski, supra,* 404 N.E.2d at 21.

■ We decline the City's invitation to follow *Rozwarski.* The *Rozwarski* decision ignores the difficult choice a fireman has in performing his duties. Although Plaintiff in this case was aware of problems with Engine No. 2 when the fire call came in, Plaintiff's choice at that time was to either respond to the emergency with the equipment available to him or to decline to go on the fire run. Plaintiff's choice to respond to a fire in a vehicle generally known to be unsafe does not compel a holding that Plaintiff incurred the risk as a matter of law.

---

**3.** Assumed risk differs from incurred risk only in that assumed risk arises where there is a contractual relationship. *Kroger Co. v. Haun, supra,* 177 Ind.App. 403, 379 N.E.2d 1004.

**4.** We agree with Judge Ratliff's limitation of *Rozwarski* in *Sellersburg Volunteer Fire Dept.,*

*Inc. v. Edwards* (1984) 1st Dist. Ind.App., 463 N.E.2d 508, 510, footnote 1: ("The voluntary incurrance of a known risk must be based upon a subjective state of actual knowledge, not upon what could have been discovered with the exercise of reasonable care.")

"The incurring of the risk must be really voluntary. If the continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary." *Ridgway v. Yenny; Ridgway v. Lombardo* (1944) 223 Ind. 16, 22, 57 N.E.2d 581, 583.

The need to react immediately to a fire call was a real inducement to Plaintiff's continued exposure to the risks posed by Engine No. 2 and we will not hold as a matter of law that Plaintiff's choice was truly voluntary.

Additionally, in *Richardson v. Marrell's, supra*, 539 N.E.2d 485, the court held that when the activity engaged in by the plaintiff is pursuant to a business relationship, the jury may infer that the risks of injury are not incurred. In the present case, Plaintiff was acting under a duty imposed on him as an employee to respond to a fire call. It would not have been unreasonable for the jury to infer that Plaintiff did not incur the risks.

■ The City argues that Plaintiff had alternatives available to him. The City contends that Engine No. 1 and 3 were available for Plaintiff's use in responding to fire calls. Plaintiff testified at trial that Engine No. 3 had been having electrical problems and would not start on the morning of the accident or later that day and that a battery charger was on it at the time of the fire call. The Plaintiff also testified that he was aware, at the time the fire call came in, that Engine No. 1 had a bad pump, the tank leaked and the brakes were bad on it. Plaintiff was aware of problems with all three vehicles and testified that it was routine to take Engine No. 2. Under these circumstances, we cannot say that Plaintiff voluntarily incurred the risk of his injuries by taking Engine No. 2, rather than Engines No. 1 or 3. The fact that Plaintiff had alternatives to taking Engine No. 2 does not bar his recovery as a matter

of law where the alternatives are fraught with their own perils. *Richardson v. Marrell's, supra*, 539 N.E.2d 485.

The City has not shown that the sole inference to be drawn from the evidence is that Plaintiff acted voluntarily in exposing himself to a known risk. We, therefore, cannot hold that Plaintiff incurred the risks of his injury as a matter of law.

## VI

## FAILURE TO GRANT JUDGMENT ON THE EVIDENCE

The City next alleges that the failure of the trial court to grant judgment on the evidence in favor of the City was contrary to law and contrary to the evidence. The City makes this argument based upon its earlier arguments concerning insufficiency of the evidence. Having already decided that the evidence and reasonable inferences were sufficient to support the verdict and judgment, we hold that it was not error for the trial court to deny judgment on the evidence in favor of the City. Ind.Rules of Procedure. Trial Rule 50(A).

## VII

## WHETHER IN THE ALTERNATIVE, CITY IS ENTITLED TO A NEW TRIAL

The City's final argument is that in the alternative it is entitled to a new trial because the trial court committed error: (1) in permitting Plaintiff to testify as an expert; (2) in permitting evidence of medical expenses; and (3) in admitting evidence of unrelated problems with Engine No. 2 as well as the other fire trucks.

### A. EXPERT OPINION TESTIMONY BY PLAINTIFF

■ The City argues that it was error for the court to allow Plaintiff to give his opinion as to what occurred to the various mechanical components of the vehicle, because Plaintiff lacked the qualifications of an expert. At trial, Plaintiff was asked to give his opinion as to what would have happened to the accelerator linkage in En-

gine No. 2 if the shackle arm broke while the vehicle was in motion. Plaintiff's response was:

"My opinion is when the shackle broke, when I turned and hit the dip in front of the Fire Station, the shackle broke and fell down and the motor ... the linkage running from the foot pedal to the carburetor, was put in a bind and pulled open and at that time, it accelerated full throttle, I applied the brakes, it wouldn't stop. That's my opinion of what happened." Record at 694.

An opinion may be given by a witness if, in the broad discretion of the trial court, the witness is qualified by training or experience to state an opinion on the matter under inquiry. *See* Miller, Indiana Evidence (1984 ed.) § 702.101 *et seq.* It is not necessary, however, that the knowledge of the expert lie within a very narrow and specific area of the subject matter. *Martin v. Roberts* (1984) Ind., 464 N.E.2d 896; *Travelers Indemnity Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349.

Plaintiff testified that he had been a fireman for 17 to 18 years and had driven Engine No. 2 many times during the course of his employment. He further testified that prior to becoming a fireman he was employed as a mechanic and had worked on trucks, tractors and heavy equipment used by the street department. He also testified that he was familiar with the linkage on Engine No. 2 and had previously worked on equipment in which the linkage of the right front of the truck dropped down due to the failure of the spring shackle.

Appellant attempts to categorize Plaintiff's testimony as an opinion upon the "cause of the accident". Appellant's Brief at 24. In this respect there is a difference between testimony bearing upon actual cause or cause in fact and that which attempts to establish proximate or legal cause. The former is more readily admissible than the latter. *See* Steinbock, Richman and Ray, Expert Testimony on Proximate Cause, 41 Vand.L.R. 261, 272 *et seq.* Plaintiff's testimony here dealt with the physical and mechanical occurrence under inquiry and was within the scope of his arguably limited expertise.

Furthermore, in the case before us, the City did not question Plaintiff's basic and generalized credentials. Rather, City objected to his qualifications with respect to the specific vehicle in question. In the light of this objection, the City has not demonstrated reversible error.

We are not unmindful of the danger that a jury might, in some situations, attribute inordinate weight to the opinion of a witness characterized as an "expert". The tension which sometimes seems to surface between the source or substance of the evidence and the function of the fact finder was well stated as follows:

"The problem with expert opinion on law application is not that the expert's testimony 'usurp[s] the function of the jury,' since, as commentators have pointed out, the jury is free to reject the expert's advice. Rather, the concern is that the expert's opinion deflects the jury from its accepted role of assessing the evidence and applying the law in light of its collective perceptions, experiences, and community sense of fairness."

Steinbock, 41 Vand.L.R., *supra*, at 278. In any event the present state of the law in the context of the case before us requires a recognition of the jury's ability to sift and weigh the evidence and a confidence that no greater weight will be accorded "expert" testimony than it should have under all of the circumstances.

Given the nature of Plaintiff's testimony in the context of the subject under inquiry, we find no basis for reversing the judgment.

### B. MEDICAL EXPENSES

Evidence of Plaintiff's medical expenses was presented to the jury. The City directs our attention to Preliminary Instruction Number 2 which advised the jury that Plaintiff "has incurred and will continue to incur medical expenses as a result of this accident." Record at 335. Based upon this instruction and the presentation of medical expenses during trial, the City argues that reversible error occurred

because Plaintiff was limited to such recovery for medical expenses as are provided by the Worker's Compensation Act. The City's argument is correct insofar as it deals with monetary recovery for medical expenses. As hereinbefore noted, the exclusive remedy for such recovery is under the Worker's Compensation Act. *Elwell supra,* 385 N.E.2d 1203. That determination, however, does not render the judgment subject to reversal.

The Preliminary Instruction was given in the context of the issues as framed by the parties. The City's own tendered Statement of the Issues, as contained in the Preliminary Instructions, recited that Plaintiff alleged "that he has incurred and will continue to incur medical expenses." Record at 94.

We further note that the final instructions contained no implication that in awarding damages the jury might consider medical expenses. Had the City desired a specific limiting instruction in this regard, it could have tendered such. It did not do so. Reversible error did not occur with reference to the Preliminary Instruction.

■■■ With reference to the evidence concerning the medical expenses, although it may have been of marginal relevance, it was admissible. As earlier noted, it was not relevant as to recoverable damages. However, the extent and cost of the medical services may have been properly considered in relationship to the severity of Plaintiff's injury and to the extent of his disability.[5] The trial court did not err in failing to grant the City's motion for new trial because of the introduction of evidence of medical expense.

### C. UNRELATED PROBLEMS WITH VEHICLES

Finally, the City contends that a new trial should have been granted on the basis that the court erred in admitting evidence of unrelated problems with Engine No. 2 as well as other vehicles. The City lists in their brief several items concerning prior

problems with Engine No. 2 as well as the other two fire engines. We do not find error in the court's admission of this evidence.

■■■ Although Plaintiff's contention at trial was that a defect in the front spring assembly caused the accident, evidence of other prior problems with Engine No. 2 was relevant to show that the City had notice of the continuing problems with Engine No. 2.

■■■ Evidence of problems with Engines No. 1 and 3 was relevant to show that Plaintiff did not voluntarily incur the risk of injury by choosing Engine No. 2 to respond to the fire call on the day of the accident.

We do not find an abuse of discretion by the trial court in denying the City's Motion for New Trial on this ground.

For all of the reasons set forth the judgment is affirmed.

SHIELDS, P.J., and HOFFMAN, J., concur.

---

5. The parties do not argue the applicability *vel non* of that provision of the collateral source rule which required admission of evidence of amounts received as worker's compensation benefits and required to be repaid by Plaintiff. I.C. 34–4–36–2 (Burns Code Ed.Supp.1989).