**Maura HAMILTON and Clyde Hamilton, Plaintiffs–Appellants,**

**v.**

**ROGER SHERMAN ARCHITECTS GROUP, INC., and JD & M Building Co., Inc., Defendants–Appellees.**

No. 73A01–9006–CV–259.

Court of Appeals of Indiana, First District.

Jan. 30, 1991.

As Corrected Feb. 1, 1991.

Douglas G. Wagner, Brazill & Bennett, Indianapolis, for plaintiffs-appellants.

Peter G. Tamulonis, John B. Drummy, James W. Roehrdanz, Kightlinger & Gray, Indianapolis, Stephen L. Vaughan, Todd J. Kaiser, Lock, Reynolds, Boyd & Weisell, Indianapolis, for defendants-appellees.

BAKER, Judge.

This case illustrates that not all products liability actions require the resolution of intellectually difficult issues and proposi-

tions. Plaintiff-appellant Maura Hamilton [1] was injured when she was walking under a bar countertop and stood up too soon, bumping her head. She brought suit against the architect that designed the bar, defendant-appellee Roger Sherman Architects Group, Inc. (Sherman), and the contractor that built the bar, defendant-appellee JD & M Building Co., Inc. (JD & M). Judge Charles O'Connor granted summary judgment to Sherman on both Hamilton's negligence and strict liability claims, and granted JD & M's motion to dismiss. Hamilton now appeals, raising several questions for our review. The dispositive issue, however, is whether the bar was defective or dangerous.

## FACTS

Hamilton worked as a bartender for Norman's, a restaurant/bar in Indianapolis's Union Station. Norman's opened in April 1986, and Hamilton began her employment a few weeks before the facility actually opened for business. Norman's accoutrements included a large wooden bar, designed by Sherman and installed by JD & M. The bar was oval shaped and had a "pass-under" entrance/exit. To enter or exit the area behind the bar, employees had to duck under the bar's countertop and take a few steps in a crouched position. The underside of the countertop was approximately 40 inches above the floor and the entrance/exit was roughly three feet wide. Prior to opening day, Maura received reminders to be careful when using the entrance/exit.

Over the next several months, Hamilton passed under the bar literally thousands of times. On at least a dozen occasions, she bumped the countertop, though her deposition testimony reveals she was aware of the danger of standing up too soon and always tried to be careful. Hamilton also trained three or four new bartenders, and advised them to be careful in using the bar's entrance/exit. In September 1986, Hamilton was entering the area behind the

bar and stood up before she cleared the edge of the countertop. As a result, she fell and sustained injuries. This suit followed.

## DECISION

Judge O'Connor granted summary judgment to Sherman. When reviewing a ruling on a motion for summary judgment, we apply the same standards as the trial court, reviewing the pleadings, depositions, answers to interrogatories, admissions, and any affidavits in the light most favorable to the non-moving party. *Moore v. Sitzmark Corp., et al.* (1990), Ind.App., 555 N.E.2d 1305. The parties here do not dispute the condition of the bar, which is the only material factual question in the case. In such a situation, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *State ex rel. Bd. of Dental Examiners v. Judd* (1990), Ind. App., 554 N.E.2d 829.

Judge O'Connor also granted JD & M's motion to dismiss under Ind.Trial Rule 12(B)(6). It is apparent from his final order, however, that he went beyond the pleadings in reviewing the motion. Therefore, under Ind.Trial Rule 12(B)(8), we will review the grant of the motion to dismiss as a grant of summary judgment under Ind.Trial Rule 56, applying the principles we have already mentioned. *Bronson v. Bronson* (1983), Ind.App., 448 N.E.2d 1231.

## I. STRICT LIABILITY

Hamilton's strict liability claims against Sherman and JD & M are governed by the Indiana Product Liability Act (the Act), IND.CODE 33-1-1.5-1 *et seq.* An action brought under the Act contains several elements essential to a plaintiff's claim. The central element here, though, is the basic requirement that a product must be in a "defective condition unreasonably dangerous" for a manufacturer or seller to be liable for a plaintiff's injuries. IND.CODE 33-1-1.5-3.[2]

---

1. Maura's husband, Clyde, is also a plaintiff-appellant. Because his claim is derivative of his

wife's, however, we refer to Maura individually throughout this opinion.

2. The parties argue the questions whether an

A product is in a defective condition ... if, at the time it is conveyed by the seller to another party, it is in a condition: (1) not contemplated by reasonable persons among those considered expected users or consumers of the product; and (2) that will be unreasonably dangerous to the expected user or consumer when used in reasonably expectable ways of handling or consumption.

IND.CODE 33–1–1.5–2.5(a). A situation is unreasonably dangerous when "the use of a product exposes the user or consumer to a risk of physical harm to an extent beyond that contemplated by the ordinary consumer who purchases it with the ordinary knowledge about the product's characteristics common to the community of consumers." IND.CODE 33–1–1.5–2.

 Hamilton's claim is nothing more than a complaint that the 40 inch high countertop under which she had to crouch was defective solely by virtue of its 40 inch height. She alleges no defect beyond the height of the object. We are frankly stunned that anyone could assert that a stationary wooden object, with no sharp, jagged, or slippery surfaces or protuberances, or other flaws, is defective merely because one must crouch under it to get from point "A" to point "B", and hold as a matter of law that the condition of the bar was not such that it posed a risk of physical harm not contemplated by reasonable persons among the bar's expected users.[3]

Neither can we see any unreasonable danger, as the Act defines that phrase, in the bar. No reasonable juror could find the risk of standing up too soon and receiving injuries was beyond the risk contemplated by the "ordinary consumer" of the bar: as a matter of common observation and experience, people in the food/beverage service industry do tasks involving lifting, balancing, bending, crouching, stooping, and carrying. Each of these tasks carries normal risks, and bumping one's head while attempting to stand up too soon in a low area is exactly one of those normal and contemplated risks within the community of consumers' "ordinary knowledge about the product's characteristics." The march of human progress toward greater material well-being and additional creature comforts has not yet reached the point at which we are prepared to say it is unreasonably dangerous for a person to have to crouch down to walk under a countertop. As Hamilton herself admits, "[t]he bar exit was only dangerous when the user miscalculated the distance he had walked while bent over and stood up to [sic] soon." *Appellant's Reply Brief* at 4.

It follows from all we have said that Judge O'Connor properly resolved Hamilton's strict liability claims in favor of Sherman and JD & M.

## II. NEGLIGENCE

### A. Architect

 Hamilton's complaint alleged Sherman failed to exercise reasonable care in designing the bar. Because there was no privity of contract between Sherman and Hamilton, Hamilton must demonstrate she comes within the rule of *Hiatt v. Brown*

---

architect and a contractor are amenable to suit as manufacturers/sellers under IND.CODE 33–1–1.5–2, and whether the bar in question is a product under IND.CODE 33–1–1.5–2, but we need not decide those questions. The absence of any defect in, or danger surrounding, the bar renders these other questions extraneous.

**3.** The parties argue about the applicability of the defense of incurred risk under IND.CODE 33–1–1.5–4(b)(1). To raise a successful incurred risk defense, the defendant must first show the plaintiff had knowledge of the *defect* in the product which caused the injury. *See Moore, supra.* Knowledge of the defect is required regardless of whether the theory is strict liabili-

ty or negligence. *Id.* The defense is inapplicable here because there was no defect.

Assuming *arguendo,* however, that there was a defect, Hamilton incurred the risk. Hamilton concedes that "[i]t is undisputed that [she] was aware that if she was not careful and came up to [sic] soon, her back would bump the top of the bar exit." *Appellant's Brief* at 13. That Hamilton could not foresee the exact injury she would suffer is irrelevant. "Knowledge of specific risk does not connote that the victim had prescience that the particular accident and injury which in fact occurred was going to occur." *Mauller v. City of Columbus* (1990), Ind.App., 552 N.E.2d 500, 503, at n. 3, *trans. denied* (quotation and citation omitted).

(1981), Ind.App., 422 N.E.2d 736 to recover for any alleged negligence on Sherman's part. *Hiatt* requires the architect's design to be so negligent "as to create a condition imminently dangerous to third persons" for a plaintiff to recover. *Id.* at 740 (citations omitted). The rationale for the rule is stated in *Citizens Gas & Coke Utility v. American Econ. Ins. Co.* (1985), Ind., 486 N.E.2d 998, and *Snider v. Bob Heinlin Concrete Const. Co.* (1987), Ind.App., 506 N.E.2d 77, *trans. denied. Snider* provides the following definitions:

> "INHERENTLY DANGEROUS. Danger inhering in instrumentality or condition itself at all times, so as to require special precautions to prevent injury, not danger arising from mere casual or collateral negligence of others with respect thereto under particular circumstances."

> "IMMINENT. Near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous."

> "IMMINENTLY DANGEROUS ARTICLE. One that is reasonably certain to place life or limb in peril."

*Id.* at 82 (quoting *Blacks Law Dictionary* 884–85, 921 [rev. 4th ed. 1968]). There is nothing inherently or imminently dangerous about the bar's countertop: the only precaution required to prevent injury is that a person using the entrance/exit look before standing upright. The normal use of one's senses as one moves through space is not a "special precaution" which renders one's environs inherently dangerous. Rather, "[t]he term 'inherently dangerous' is more properly applied to activities which are, by their nature, always dangerous, i.e., blasting or wild animals." *National Steel Erection v. Hinkle* (1989), Ind. App., 541 N.E.2d 288, 292, *reh'g. granted and clarified on other grounds*, 553 N.E.2d 1252, *trans. denied.* A stationary countertop is not, by its nature, always dangerous.[4] Neither is it an article which is reasonably certain to imperil life or limb.

Sherman's design did not create a condition of imminent danger to third persons, and the trial court properly granted summary judgment to Sherman on Hamilton's claim of negligent design.

### B. Contractor

A similar analysis applies to Hamilton's negligence claim against JD & M. Generally, independent contractors are not liable for injuries to third persons after acceptance of their work by the owner. *Citizens Gas & Coke Utility, supra; National Steel Erection, supra.* Liability to third persons will continue after acceptance, however, in two circumstances. First, if "the work is so negligently defective as to be imminently dangerous to third persons," an injured third party may recover from the contractor. *Citizens Gas & Coke Utility, supra*, at 1000. *See also Holland Furnace Co. v. Nauracaj* (1938), 105 Ind. App. 574, 14 N.E.2d 339, *trans. denied.* Liability to third persons will also continue when the plans relied on by the contractor "are so obviously defective that no reasonable independent contractor would follow them." *Snider, supra*, at 81.

Under either theory, Hamilton bumps into the requirement of a defect, either in the plans or in the work. As for the work, we have already stated the design of the bar created no imminent danger to third persons. The record does not reveal the plans, but this is immaterial. For liability to attach, the contractor must rely on defective plans, and it follows logically that defective plans lead to defective work. *See also Cooper v. Garmon Bros. Contracting, Inc.* (1983), 166 Ga.App. 839, 305 S.E.2d 499 (restaurant employee could not recover from contractor for injuries sustained in tripping over a protruding drain pipe; the plans which the defendant contractor followed were not so defective as to give the defendant notice that the drain was dangerous). There being no defective work, there could not have been any reliance on defective plans.

---

**4.** We do not adopt a *per se* rule that a stationary countertop can never be dangerous. We merely hold that a countertop's height alone is not a defect.

## CONCLUSION

The trial court is in all things affirmed.

ROBERTSON, J. concurs.

SULLIVAN, J. concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

I concur in the majority opinion as to Part II insofar as it absolves Sherman from negligence liability. The design of the bar did not create a condition of imminent danger. As to JD & M, however, the majority implies that the product itself was not defective. I do agree that the contractor's work was not defective. I do not agree, however, that the plans and therefore the product itself were free from defect. In any event, I agree that the trial court correctly entered summary judgment for both defendants as to the negligence claim.

I have more basic disagreement with Part I. In my view, the product was in a "defective condition" when it left the designer's drawing board. By that very design, the unknown but anticipated user could not gain access to his or her work station without assuming the unnatural stooping posture and virtually crawling or duck-walking through the tunnel-like configuration. Until actually seeing and using the product, the unknown prospective user could not be anticipated to have a contemplation that such contortions would be necessary for the performance of the employment duties.

However, the second prong of the liability test, i.e., the "unreasonably dangerous" element saves the designer in this case. Admittedly, our case may not be decided upon application of the "open and obvious danger" rule. That rule was abrogated in *Koske v. Townsend Engineering Co.* (1990) Ind., 551 N.E.2d 437. Nevertheless, consideration of Hamilton's conduct in the light of the circumstances remains relevant to resolution of the issues before us.

One day after the *Koske* decision, our Supreme Court in *FMC Corporation v. Brown* (1990) Ind., 551 N.E.2d 444 observed that the open and obvious rule "bears a close relationship" to the affirmative defense of incurred risk. 551 N.E.2d at 449. That observation carries with it the implication that although the concepts are related, they are not one and the same. Accordingly, it is not necessarily inappropriate to say that while the open and obvious doctrine is not applicable in a strict liability suit, the doctrine of incurred risk may, under some circumstances, be applied.

Also subsequent to *Koske*, but only three weeks later, in *Miller v. Todd* (1990) Ind., 551 N.E.2d 1139, the court held that "the relative obviousness of a defect is certainly pertinent to determining whether a product is ... unreasonably dangerous" 551 N.E.2d at 1143.

In *Montgomery Ward & Co. v. Gregg* (1990) 1st Dist.Ind.App., 554 N.E.2d 1145, *trans. pending,* obviousness was also found to be "an appropriate consideration ... in evaluating the actual state of mind of the product user when the affirmative defense of incurred risk is raised." 554 N.E.2d at 1151. Assuming that injuries have been caused by a product, the defense of incurred risk requires the defendant to prove two things: (1) plaintiff's knowledge of the defect, and (2) plaintiff's unreasonable use of the product despite that knowledge. *Moore v. Sitzmark Corp.* (1990) 1st Dist., Ind.App., 555 N.E.2d 1305. The statute itself, I.C. 33–1–1.5–4(b)(1) provides:

"It is a defense that the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it."

The first element is clearly present in this case. The second element is absent, however. To be sure, Hamilton was unmistakably aware of the defect and of the danger. She had entered and exited the bar on numerous occasions and had bumped her head on several such occasions. She had cautioned other employees about the danger. Hamilton, however did not proceed to *unreasonably* use the bar. The manner of her use was not unreasonable because if the product were to be used at all, it had to be used in the precise manner in which it was used at the time of

her injury. It was a matter of use or do not use. The choices do not equate with "unreasonable use".

On the other hand, if we were to discount the "reasonableness" of Hamilton's use and focus merely upon the voluntariness of the use, a different result might obtain. *Restatement of Torts*, 2d § 496 E, Comment b, observes that acceptance of a risk is voluntary even though plaintiff is acting under the compulsion of circumstances not of the defendant's making. Under such analysis, a plaintiff driven by his own economic necessities is nevertheless bound to the conscious and voluntary undertaking of the risk.

In this regard, the choices available to Hamilton differ from those available to the assistant fire chief plaintiff in *City of Alexandria v. Allen* (1990) 2nd Dist., Ind.App., 552 N.E.2d 488. There, albeit in a negligence setting, we affirmed a jury verdict for plaintiff holding that the choice of a fireman to answer an emergency fire run using equipment known by him to be defective is not truly voluntary. We there relied upon a quote from an earlier Supreme Court case, *Ridgeway v. Yenny* (1944) 223 Ind. 16, 22, 57 N.E.2d 581, 583:

> "... if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine [of incurred risk] does not apply, since the exposure is not in a true sense voluntary."

Whether or not the considerations deemed important in *City of Alexandria* undercut the above-stated rationale of the *Restatement,* the choices available to Hamilton do not bring into play the saving "tough choice" public policy underpinning of *City of Alexandria.*[1] In any event, my concurrence does not depend upon whether or not Hamilton incurred the risk.

As earlier discussed, *Montgomery Ward & Co. v. Gregg, supra,* held that obviousness of a defect was germane to the defense of incurred risk. The case also held,

as did *Miller v. Todd, supra,* that obviousness could be considered as it relates to whether the product is "unreasonably dangerous". 554 N.E.2d at 1164.

In *Rogers v. R.J. Reynolds Tobacco Co.* (1990) 2nd Dist., Ind.App., 557 N.E.2d 1045, *trans. pending,* we held: "... a product is not unreasonably dangerous if it injures in a way which, by objective measure, is known to the community of persons [using] the product." 557 N.E.2d at 1053. In the case before us, by objective measure, the community of persons using the bar, and more particularly Hamilton, knew that it would likely injure in the precise way the injury here was sustained, i.e., in raising up, she struck her back and was caused to fall. The obviousness of the danger therefore triggers the necessity to view Hamilton's conduct and use of the product in the light of her knowledge.

We observed in *Jarrell v. Monsanto Co.* (1988) 2nd Dist.Ind.App., 528 N.E.2d 1158, *trans. denied,* that whether or not the product contains a defect focuses upon the product itself at the time it leaves the hands of the defendant. 528 N.E.2d at 1167. Whether the product is unreasonably dangerous, however, focuses upon the reasonableness of the consumer's conduct in his use of the product, and in light of his awareness of a defect and danger. 528 N.E.2d at 1168. Although the product may be considered somewhat dangerous in view of a particular defect, that defect may not be *unreasonably* dangerous if the user has full awareness of the defect and the likelihood of injury.

In the vast majority of cases, whether a product is unreasonably dangerous is a question of fact inappropriate for summary judgment. Where, as here, however, no reasonable trier of fact could differ as to the determination, it may be held as a matter of law that the product was not unreasonably dangerous. I would so hold in this instance and for that reason concur

---

1. Where, as here, the risk of injury is minimal and the utility of continuing use of the product is relatively great, it may be said that the plain-

tiff voluntarily accepts a known *reasonable* risk. *Kroger Co. v. Haun* (1978) 2nd Dist., Ind.App., 379 N.E.2d 1004 at 1012.

in the affirmance of the summary judgments for both defendants.