**B. Marie REYNOLDS, Administratrix of the Estate of Floyd G. Reynolds, Deceased, Appellant (Plaintiff Below),**

v.

**STRAUSS VEAL, INC., and David L. Chryst, Appellees (Defendants Below).**

No. 92A03–8607–CV–181.

Court of Appeals of Indiana, Third District.

Feb. 18, 1988.

William F. McNagny, Charles W. McNagny, Barrett & McNagny, Fort Wayne, for appellant.

Tom F. Hirschauer, Jay T. Hirschauer, Logansport, for appellee Strauss Veal, Inc.

Sherrill Wm. Colvin, John O. Feighner, Snouffer, Haller & Colvin, Fort Wayne, for appellee David L. Chryst.

STATON, Judge.

B. Marie Reynolds, (Reynolds) Administratrix of the estate of Floyd G. Reynolds, deceased, brought suit against Strauss Veal, Inc. (Strauss) and David L. Chryst (Chryst) for the wrongful death of her husband, Floyd G. Reynolds. The jury returned a verdict in favor of Reynolds for $165,000. Both defendants Strauss and Chryst filed motions to correct error alleging, *inter alia*, that the trial judge erred in denying their respective motions for judgment on the evidence at the end of the trial. The trial judge, pursuant to Indiana Rules of Procedure, trial rule 59(j), reversed his previous ruling on the motions for judgment on the evidence, set aside the jury verdict, and entered judgments on the evidence for both Strauss and Chryst. Reynolds appeals this order raising two issues, which we have consolidated and restated as:

Whether the trial judge erred in setting aside the jury verdict and granting Strauss' and Chryst's motions for judgment on the evidence?

Reversed.

Initially, we note the standard of review applicable for a judgment on the evidence.

A jury's verdict may be set aside only where a latent lack of evidence exists or the verdict is contrary to the uncontradicted evidence. *Bymaster v. Bankers National Life Ins. Co.* (1985), Ind., 480 N.E.2d 273, 281. When the trial court considers a motion for judgment on the evidence subsequent to the jury's verdict,

it must view the evidence in a light most favorable to the nonmoving party. The trial court may enter judgment only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim. The evidence must point unerringly to a conclusion not reached by the jury. *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, 990. If there is relevant evidence supporting the verdict, the motion may not properly be granted. *Id.* The final determination is left to the factfinder. *Id. Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109, 114, *reh. denied.* On appeal, we use the same standard of review in determining the propriety of a judgment on the evidence. *Coffel v. Perry* (1983), Ind. App., 452 N.E.2d 1066, 1068.

■ Reynolds proceeded on theories of product liability and negligence. The jury was instructed on both theories, but because Strauss and Chryst objected to the final instruction on negligence, they argue that only the product liability claim should be considered on appeal. However, because the objection to the instruction on negligence shown in the record lacks specificity, Strauss and Chryst have not preserved any error on appeal. *Dunkelbarger Const. Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355, 358, *reh. denied.* Therefore, we will review this case to determine if there was probative evidence to support Reynolds' negligence claim.

Viewed most favorably to Reynolds, the evidence established the following. Wayne Strader became interested in veal confinement operations after seeing a program on television about them. He met with Ken Laaker, an employee of Strauss, to discuss what a veal confinement operation would entail and the profitability of such an operation. A veal confinement operation is a method of raising veal calves in which the farmer gets the calves at a very early age and raises them in an environmentally controlled barn. The calves are raised in the barn for a period of 15–17 weeks, at which time they are ready to be sold.

Strauss was in the business of promoting veal confinement operations. Strauss furnished Strader with a line sketch of the set up of the veal confinement operation. This sketch did not provide for a waste handling facility. Strauss discussed with Strader three alternative systems of waste handling. Based on the information given him by Strauss, Strader chose to go with the septic tank system. Strauss did not provide services for the waste handling component of the confinement operation, however, it was an integral and necessary part of the operation. Accordingly, Strauss recommended the services of Chyrst, an engineer who had designed septic tank systems for sixteen other customers of Strauss. Strauss contacted Chryst to have him draw up a design to submit to the Indiana Board of Health for the necessary approval of Strader's waste handling facility. Strauss also gave a copy of the design to Strader for building his facility. The designs did not indicate they were not final construction plans and specifications.

Chryst designed the septic tank system such that pumps were to be installed at the bottom of the dousing tank. The pumps were used to pump the effluent collected from the veal barn into the pipes that carried the effluent to the fields for draining. A danger existed with this type of system because the manure produces methane gas as it decomposes in the tanks. The design submitted by Chryst did not provide for any type of safety feature to protect someone going into the tank from the danger of methane gas. Neither did the design have any type of feature for raising the pumps out of the tank so that it would not be necessary to go into the tank. Methane gas is both colorless and odorless and neither Strauss nor Chryst ever warned Strader about the dangers of methane gas.

In 1980, Strader and his neighbor, Floyd Reynolds, went into the dousing pit to make some repairs on the pumps. There was no evidence that either man was aware of the danger of methane gas. Both men were overcome by the gas and died.

The threshold question with respect to Strauss' and Chryst's liability is whether

there was a duty to warn. This depends on whether they 1) knew or had reason to know the septic tank system as designed by Chryst was likely to be dangerous, and 2) had no reason to believe that Reynolds would realize that dangerous condition. If this duty to warn existed, they must have exercised reasonable care to inform Reynolds of the dangerous condition. *American Optical Co. v. Weidenhamer* (1983), Ind., 457 N.E.2d 181, 187, *reh. denied, citing Restatement, Second, Torts* § 388.

■ The evidence supports a finding that both Strauss and Chryst knew the design was likely to be dangerous. Strauss was familiar with the septic tank system designed by Chryst. They both knew that methane gas would be produced in the dousing tank containing the pumps. Methane gas is both colorless and odorless, thus the jury could infer that Strauss and Chryst had no reason to believe that Reynolds would realize the danger of methane gas in the tank. It is undisputed that neither Strauss nor Chryst did anything to inform Reynolds of the dangerous condition. Clearly the evidence was sufficient for the jury to find a duty to warn and a breach of that duty. However, the trial court found the jury verdict was contrary to and not supported by the evidence on the element of proximate cause, finding a complete lack of evidence. Reynolds argues relevant probative evidence was presented on this issue and the trial court improperly reweighed the evidence in finding a lack of proof. A review of the record compels us to agree with Reynolds.

■ Proximate cause is a question of fact best left to the jury. In determining whether a negligent act or omission is the proximate cause of an injury the test is whether the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, 1214, *trans. denied.* The key is the foreseeability of the ultimate injury as a natural and probable consequence of the act or omission. *Id.*

Applied to this case, the question is: was it reasonably foreseeable that Reynolds would be overcome by methane gas when he went into the dousing tank to work on the pumps? Was this a natural and probable consequence of Strauss' and Chryst's failure to warn about the dangers of methane gas in the dousing tank?

■ The evidence established that Strauss and Chryst knew pumps would be installed at the bottom of the dousing tanks. The jury could reasonably infer from this that they knew or should have known that someone would have to go into the tank to perform maintenance work on the pumps and encounter the methane gas. Strauss attempts to argue that the proximate cause of Reynolds' death was the intervening negligent act of Strader building the waste facility without obtaining the necessary permit from the Indiana Board of Health. In connection with proximate cause it is generally for the jury to determine whether an intervening cause was such as to break the causal connection between defendant's act and the injury. *Id.* at 1215. For independent intervening conduct to prevent the extension of liability to the conduct of the original wrongdoer, the later conduct must constitute a cause interrupting the natural sequence of events, turning aside their course, preventing the natural and probable result of the original act or omission and producing a result that could not have been reasonably anticipated. *Id.*

The evidence presented is that Strauss knew Strader was building the waste facility before getting approval by the State Board of Health. Furthermore, the rejection by the State had nothing to do with the design placing the pumps at the bottom of the tank; the plan was rejected because the State was concerned about the draingage capability of the soil on Strader's farm. Strauss not only could reasonably anticipate that Strader would build the facility without the required permit, Strauss *knew* Strader was building it. The natural sequence of events was that the waste handling facility would be built according to

Chryst's design. Clearly, this sequence of events was not interrupted.

Chryst argues his act or omission could not be the proximate cause of Reynolds' death because he designed the waste handling facility for the sole purpose of submitting it to the Indiana Board of Health for approval. He argues it was the intervening negligent act of Strader building the facility according to plans not meant to be final construction plans that proximately caused Reynolds' death. However, it is within the province of the jury to determine whether it was reasonably foreseeable that Strader would build his facility in accordance with the plans submitted by Chryst.

Reynolds presented evidence that Chryst had submitted similar designs for sixteen other customers of Strauss. The evidence also established that Chryst submitted a detailed, thirty-nine page plan to the Indiana State Board of Health on behalf of Strader. The plans did not indicate they were not final construction plans. Chryst himself testified that if a farmer requests his services it is because he is planning to build a septic tank system. From these facts the jury could determine it was reasonably foreseeable that Strader would use Chryst's design to build his septic system.

Under these circumstances, it was error for the trial judge to set aside the jury's verdict and to enter judgment on the evidence for Strauss and Chryst. This cause is reversed with instructions to enter judgment on the jury's verdict, and to deny Strauss' and Chryst's motions to correct errors.

MILLER, J., concurs.

GARRARD, P.J., concurs in result.